# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THE ESTATE OF GREGORY ROMBACH, ET AL** | * | **CIVIL ACTION** |
| | * | **NUMBER: 16-556** |
| **VERSUS** | | |
| | * | **SECTION:   B** |
| **JOE CULPEPPER, ET AL** | | |
| *     *     *     *     *     *     *     * | | **MAGISTRATE:  2** |

## MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

The defendants have filed a Motion for Summary Judgment, seeking to dismiss plaintiffs' claims under 42 U.S.C. § 1983 and Louisiana law, for damages resulting from the death in July of 2015 of the decedent, Gregory Rombach -  a pretrial detainee in the Bogalusa City Jail.  The plaintiffs respectfully assert that the defendants have failed to demonstrate that that they are entitled to summary judgment as a matter of law, and plaintiffs further assert there are significant questions of material fact, many of which bear on the credibility of the defendant officials and their employees.

> A party is entitled to summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Hockman v. Westward Commc'ns, LLC,* 407 F.3d 317, 325 (5th Cir.2004). In reviewing the evidence, the court must "refrain from making credibility determinations or weighing the evidence."[1]

For the following reasons, the defendants' Motion for Summary Judgment should be denied.

---

[1] *Deville v. Marcantel*, 567 F.3d 156, 163-64, citing *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007) .

## I. THE PLAINTIFFS REQUEST THAT THE COURT DEFER RULING ON THE MOTION UNTIL THE PLAINTIFFS MAY AMEND THEIR COMPLAINT.

The plaintiffs respectfully urge the Court to defer ruling on the Motion for Summary Judgment at this time. The plaintiffs have filed a Motion for Leave to File a Second Amended Complaint.[2] At the present time, the motion has been denied by the Magistrate Judge, without prejudice, subject to the motion be re-urged should the Court grant a continuance of the trial in this matter.[3] The plaintiffs have filed a Motion to Continue Trial[4] and have requested expedited consideration of that motion.[5]

Should the Court grant the motion and dismiss the claims against the defendants who are currently named, the plaintiffs may lose the benefit of the interruption of prescription which exists between joint tortfeasors such as the named defendants and the defendants sought to be named in the Second Amended Complaint.

It is well-settled case law that federal courts apply a state's statute of limitations *and* its equitable-tolling principles to Section 1983 actions. *See Burge v. Parish of St. Tammany,* 996 F.2d 780, 788 (5th Cir.1993.). Louisiana Civil Code article 2324(c), which provides that "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors," is just such an equitable-tolling principle. La. Civ.Code art. 2324(c).[6]

As such, the plaintiffs respectfully request that the Court defer ruling on the motion at this time, and allow the plaintiffs to amend while the claims are still pending against the defendants who were originally named in their original and First Amended Complaints.

## II. THERE ARE SIGNIFICANT QUESTIONS OF FACT ABOUT THE CIRUCUMSTANCES OF THE DECEDENT'S DEATH WHICH DIRECTLY BEAR ON CREDIBILITY ISSUES.

The defendants' view of the facts surrounding Mr. Rombach's death, which is repeated

---

[2] Doc. 30.
[3] Doc. 42.
[4] Doc. 43
[5] Doc. 44.
[6] *Evans. v. Edwards,* No. 14-41 (E.D. La. 5//29/2015) [Knowles, Mag. J.], 2015 WL 3454737 at *4

throughout their memorandum, is adequately set forth at page 17 of their memorandum:

> The record clearly proves that during his incarceration in the Bogalusa Jail Facility from July 6, 2015 through July 9, 2015, Rombach never told anyone, including his family members, that he had a duodenal ulcer, was suffering from a duodenal ulcer, needed medical treatment for a duodenal ulcer, wanted treatment for a duodenal ulcer, and/or that he needed to go to the hospital for medical treatment of a duodenal ulcer. In fact, when Rombach was processed into the jail facility, he answered "no" to all questions asking if he needed medical attention, whether he was on drugs, and/or whether he required medical treatment for any reason. During his three day stay in the jail, Rombach did make it known that he was withdrawing from heroin, however, at no time did he exhibit any signs that he was in emergent and/or unusual distress, and at no time, even when he was asked by jail personnel did he state that he needed medical attention.[7]

At page 9 of their memorandum, while the defendants assert that Chief Culpepper and Mayor Perette had no interaction or contact with the decedent and, therefore, cannot be liable in this matter, the defendants allege the following in regard to Warden Adams:

> Warden Adams was on duty in his official capacity as an employee of the Bogalusa Police Department at all times pertinent herein and had several occasions to come into contact with Rombach. At no time did Rombach appear to be in medical distress and Rombach never told Warden Adams that he was suffering from a duodenal ulcer and/or that he needed medical or emergent treatment.[8]

In support of this statement, the defendants then cite Warden Adams affidavit, in which Warden Adams states the following:

> Rombach admitted to the jail personnel that he was withdrawing from heroin, but also denied needing medical attention.[9]

> Rombach never told me nor did I observe that Rombach was experiencing any unusual suffering related to his withdrawal and/or any other medical condition. Rombach never told any jail personnel and/or employees of the Bogalusa jail facility nor any jail personnel or employee of Bogalusa I observe [sic] that Rombach was experiencing any unusual suffering related to his withdrawals and/or any other medical condition.[10]

The defendants' version of these facts is repeated several times at pages 20-22 of the

---

[7] Doc. 29-1, p. 17.
[8] Doc. 29-1, p. 9.
[9] Doc. 29-5, p. 3, ¶ 8
[10] Doc. 29-5, p. 5, ¶15.

Memorandum in Support, in regard to plaintiffs' state law claims. If one were to believe the defendants' version of these facts, their argument regarding the "facts" has been summed up as follows:

> The Plaintiffs lawsuit against Chief Culpepper, Warden Adams, and Mayor Perette alleges that they had specific knowledge that Rombach was suffering from a life threatening condition and that they intentionally and knowingly ignored Rombach's pleas for help and medical treatment and even acquiesced in Rombach's suffering and eventual death. These allegations are absurd and there is absolutely no evidence to lodge such baseless allegations against these Defendants.[11]

The plaintiffs respectfully aver that their allegations are far from "absurd," and that their allegations are not "baseless" but, instead, are supported by evidence. There is, in fact, evidence which casts significant doubt on the credibility of *anything* the defendants and/or their employees have to say, and which casts significant doubt on the truthfulness – or, at least, the completeness – of any purported "investigatory" documents which the defendants have produced.

Attached hereto as **Exhibit 1** is an "Investigative Narrative" provided by the Bogalusa Police Department and authored by one of the defendants' employees, Det. Sgt. David Miller. In paragraph 2 of his report, Detective Miller states that, in the course of his investigation, he discovered Mr. Rombach's body in the cell, "and it appeared that **Rombach had been sick through the night**, as there was vomit in the toilet." Detective Miller then interviewed two other inmates, Chadrick Hart and Christopher Flot, who purportedly told him that Rombach had been sick since he arrived, or for several days. Despite these facts, the defendants and/or their employees claim that they had no knowledge that Mr. Rombach was having any medical issues, despite their ability to closely observe him over that period of time. In fact, in his affidavit, Warden Adams confirms that, at one point, Mr. Rombach was moved "to an observation cell that is closer

---

[11] Doc. 29-1, p. 10.

to the guard's control room…to allow the guards to better observe him."[12]  He further states that, when asked about his withdrawal symptoms, Mr. Rombach "said he was fine."[13]

However, attached hereto as **Exhibit 2** is a Declaration Under Penalty of Perjury which has been executed by Christopher Flot, one of the inmates referred to in Detective Miller's report. Mr. Flot confirms, as stated in Det. Miller's report, that he was in the cell next to Mr. Rombach. He also states that Mr. Rombach believed he was suffering drug withdrawals, and had been vomited up the food he ate; he states that Mr. Rombach advised that he wanted to be treated with "IV's and fluids."  Mr. Flot then continues:

> On the second day of his incarceration, he [Mr. Rombach] was placed in a private cell **after he repeatedly called for medical attention.  I heard Greg ask to be taken to a hospital for medical attention.**  I heard Mr. Otis, one of the wardens, tell Greg "Heck no we are not taking you to the hospital.  I told you that."

Later in his declaration, Mr. Flot states the following:

> I personally heard Greg tell Mr. Otis, Mr. Lewis and Ms. Knight that he did not feel well and he wanted to go to the hospital.  I personally told Mr. Otis, Mr. Lewis & Ms. Knight that Greg did not feel well, was not eating and was vomiting and he needed a doctor.

Mr. Flot's declaration is supported by recordings of phone calls on the inmate phone system.  Due to constraints with electronic filing, the plaintiff is producing to the Court on a CD – and to counsel for the defendants – recordings of two phone calls; the CD is **Exhibit 3**.  One call is from Christopher Flot to Mrs. Rombach, and he describes the fact that Mr. Rombach "begged for help and begged for help, but couldn't get no kind of help" and Rombach just "throwed up and throwed up."   The second phone call to Mrs. Rombach is from three inmates, describing what they knew, which includes: Mr. Rombach was "pleading…begging for his life"; he was "throwing up blood"; that the inmates told one of the guards (Sergeant Lewis), "The man needs help"; that

---

[12] Doc. 29-5, pp. 3-4, ¶ 11.
[13] *Id.*

5

Sergeant Lewis either didn't want to hear that, or thought they were playing or joking; and, "We was banging on the doors trying to get help for him."

The plaintiffs respectfully assert that the declaration and these phone calls raise serious question about the denials by the defendants regarding their knowledge of Mr. Rombach's need for medical care. The defendants' denials in the face of this evidence smacks of a cover-up. Many of the legal questions surrounding the plaintiffs' claims for relief under Section 1983 inquire into the "subjective" beliefs of the defendant officials and their employees. However, the issue of the credibility (or lack thereof) of the defendant officials and employees permeates – even contaminates – any legitimate effort to examine those legal questions which then examine the defendants' "subjective" beliefs.

The Court is asked to bear in mind these serious factual issues which undermine the defendants' credibility at any point in time the Court is asked to examine the defendants' subjective knowledge or beliefs, and to disregard any purported lack of knowledge of the defendant officials and their employees concerning the medical condition and needs of the decedent, Gregory Rombach.

## III. THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY, AND QUESTIONS OF FACT EXIST REGARDING THE DEFENDANTS' INDIVIDUAL AND MUNICIPAL LIABILITY.

### A. QUALIFIED IMMUNITY

The defendants assert that the defendant officials and employees are entitled to qualified immunity.[14]

A qualified immunity defense alters the usual summary judgment burden of proof. *See Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir.2005). Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by

---

[14] The defendants admit at page 8 of their memorandum that "[q]ualified immunity questions should be resolved at the earliest stage in the litigation," but yet have waited almost two years since their Answer was filed in April of 2016 to raise this defense.

establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Id.* The plaintiff bears the burden of negating qualified immunity, *id.,* but all inferences are drawn in his favor.

The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. *Manis v. Lawson,* 585 F.3d 839, 843 (5th Cir.2009). A court may rely on either prong of the defense in its analysis. *Id.*

If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir.2004) (citations omitted). Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury. *Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir.1999). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller,* 519 F.3d 231, 236 (5th Cir.2008). The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal. *Id.* at 236–37. An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight. *Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994).[15]

As a pretrial detainee, decedent Gregory Rombach "had a clearly established Fourteenth Amendment right not to be denied, by deliberate indifference, attention to his serious medical needs."[16] Thus, on summary judgment, the question in regard to the defendants' liability, and in regard to their assertion of qualified immunity, becomes whether the plaintiffs in this case have sufficient evidence to show that there are genuine issues of material fact that this clearly established constitutional right was violated, and sufficient evidence to raise an issue of fact as to whether the defendants' actions were objectively reasonable.

**B.      INDIVIDUAL LIABILITY**

**1.      The individual officers - John and Jane Does.**

---

[15] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).
[16] *Id.*, citing  *Hare v. City of Corinth,* 74 F.3d 633, 650 (5th Cir.1996) (en banc).

Initially, the defendants ask the Court to dismiss the plaintiffs' claims against the fictitiously named John and Jane Doe defendants. The plaintiffs respectfully urge the Court to deny the request to dismiss those claims at this time. The plaintiffs have filed a Motion for Leave to File a Second Amended Complaint.[17] At the present time, the motion has been denied by the Magistrate Judge, without prejudice, subject to the motion be re-urged should the Court grant a continuance of the trial in this matter.[18] The plaintiffs have filed a Motion to Continue Trial[19] and have requested expedited consideration of that motion.[20]

As they did in their Motion to Continue Trial, the plaintiffs respectfully assert that they would be prejudiced if this matter were not continued and they were not allowed to add the additional defendants by way of an amended complaint. The plaintiffs' claims against the proposed defendants remain viable claims under federal and state law, those claims have not prescribed, and no just reason exists to disallow the defendants to be added.

For these reasons, the plaintiffs respectfully request that the Court defer ruling on the defendants' Motion for Summary Judgment insofar as its seeks dismissal of plaintiffs' claims against individual employees of the defendants who are the subject of the plaintiff's Motion for Leave to File Second Amended Complaint.

In addition, the plaintiff respectfully aver that the questions of fact set forth below in regard to Warden Adams equally apply to the claims against the individual employees. The evidence at this point suggests, as set forth in Mr. Flot's declaration, that he has knowledge of complaints made to several of the employees sought to be named as defendants, and provides evidence that these employees were deliberately indifferent to the medical needs of Gregory Rombach, and

---

[17] Doc. 30.
[18] Doc. 42.
[19] Doc. 43
[20] Doc. 44.

ignored his and other inmates' requests for medical attention for Mr. Rombach. At this point, the motion for summary judgment in regard to the individual employees sought to be named in the Second Amended Complaint should be denied.

### 2.    The mayor, chief of police and warden

At this stage, given that the liability of the individual officers has not been addressed, the issue is whether the chief of police, the warden and/or the mayor are liable in the individual capacities or whether issues exist as to municipal liability, which the defendants' motion refers to as "Monell" liability.

In regard to individual liability, after recognizing that "[t]he Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners,"[21] the Fifth Circuit has held:

> The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Additionally, the plaintiff must show that jail officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834, 114 S.Ct. 1970.The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the jail officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839, 114 S.Ct. 1970.[22]

Mr. Rombach was clearly faced with a substantial risk of serious harm: he died. As stated above in Section 1, the defendants admit that Warden Adams believed Mr. Rombach was suffering drug withdrawals; it is also admitted that he personally encountered Mr. Rombach and Warden Adams denies observing any medical condition allegedly being experienced by the decedent, and he denies that anyone told any of his jail personnel of any alleged medical condition.[23] These statements are called into question by the defendants' own investigative report, which evidences

---

[21] *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002), citing *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)
[22] *Id.*
[23] See Affidavit of Warden Adams, Doc. 29-5.

that Mr. Rombach appeared to have been "sick through the night."[24] The statements are seriously called into question by the declaration of Mr. Flot, who states that Mr. Rombach had been ill for several days while incarcerated, and that both he and Mr. Rombach requested medical attention for the decedent, which was refused.[25] These statement are further called into questions by the evidence in the inmate phone calls provided by the defendants.[26]

Prior to the date of Mr. Rombach's death in July of 2015, courts have recognized that drug withdrawals – the symptoms that the defendants *subjectively* believed Mr. Rombach to be suffering from – constitutes a serious medical need:

> Further, numerous courts have held that the symptoms of withdrawal constitute a serious medical need. *See Foelker v. Outagamie County,* 394 F.3d 510, 513 (7th Cir.2005) (prisoner suffering from methadone withdrawal, who defecated on himself and believed he was at a "wedding hotel," had serious medical need); *Sylvester v. City of Newark,* 120 Fed. Appx. 419, 423 (3d. Cir.2005) ( "There is no real dispute that Vargas was suffering from acute withdrawal with excessive vomiting, a serious medical need"); *Mayo v. County of Albany,* 2009 WL 935804, *4 (N.D.N.Y.2009) (withdrawal from alcohol and drugs is a serious medical need); *Estate of Perry v. Boone County Sheriff,* 2006 WL 1587799, *3 (S.D.Ind.2006) (alcohol withdrawal accompanied by seizures constitutes serious medical need); *Gonzales v. Cecil County, Maryland,* 221 F.Supp.2d 611, 616 (D.Md.2002) (heroin withdrawal presents serious medical need).[27]

As in the *Sylvester* case cited above, the plaintiffs have presented evidence that Mr. Rombach "was suffering from acute withdrawal with excessive vomiting, a serious medical need."[28] In *Thompson v. Upshur County, TX,*[29] the Fifth Circuit detailed case law prior to 2001 in which defendants were found to be deliberately indifferent to the medical needs of a detainee

---

[24] Ex. 1.

[25] Ex. 2.

[26] Ex. 3.

[27] *Quatroy v. Jefferson Parish Sheriff's Office*, Nos. 04-451 and 04-1425 (E.D. La. 5/14/2009) [Vance, J.], 2009 WL 1380196 at *9.

[28] *Sylvester v. City of Newark,* 120 Fed. Appx. 419, 423 (3d. Cir.2005); Ex. 2, Report of Investigation; Exhibit 3, Declaration of Christopher Flot.

[29] 245 F.3d 447 (5th Cir. 2001)

suffering withdrawals (thus, establishing that the jail officials in this case knew or should have known of the serious medical need in this case at the time the violations herein occurred in 2015):

> Plaintiffs correctly observe that pretrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials. *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hare v. City of Corinth,* 74 F.3d 633, 636 (5th Cir.1996) (*en banc* ) (*Hare II* ); *Lancaster v. Monroe County,* 116 F.3d 1419, 1426 (11th Cir.1997); *Colle v. Brazos County, Texas,* 981 F.2d 237 (5th Cir.1993); *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir.1979). *Lancaster, Colle* and *Fielder* establish that delirium tremens is a serious medical need.

> In *Fielder,* a request by the prisoner's mother to the jailer that he receive medical attention for delirium tremens was followed by a request from the prisoner himself. *Fielder* 590 F.2d at 108. These requests were ignored, the jailers stating that they thought the prisoner was "faking." *Id.* This evidence was sufficient to support the jury's verdict for the plaintiff. *Id.*

> *Colle* reversed the district court's dismissal of the plaintiff's complaint and held that the plaintiff properly alleged a constitutional violation by asserting that the sheriff: 1) staffed the jail with persons who did not have the authority to transfer a detainee to the hospital; and 2) had a policy of failing to monitor the serious health needs of detainees. *Colle,* 981 F.2d at 245. The sheriff's jailers *failed to call* for medical assistance as the condition of an inmate they knew to be suffering from delirium tremens worsened. *Id.* at 240.

> *Lancaster* reversed the district court's grant of summary judgment based on defendants' entitlement to qualified immunity and held that either a "total failure" to provide or an exacerbating delay in providing lifesaving medical treatment to a detainee suffering from DTs was a violation of constitutional rights. *Lancaster,* 116 F.3d at 1425–28. The court cited *Fielder* for the proposition that DTs was recognized as a serious medical need. *Id.* at 1426. *Lancaster* established that ignoring the dangers of alcohol withdrawal and waiting for a "manifest emergency" before summoning medical help constituted deliberate indifference.[30]

Thus, in regard to individual liability, the plaintiffs have established (or at least presented an issue of fact) that, objectively, the decedent was exposed to a substantial risk of serious harm.[31] *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  A person who is believed to be suffering from drug withdrawals has a serious medical need.  It is a question of fact for trial whether treating withdrawals with over-the-counter medication is sufficient; the

---

[30] *Id.* at 457-58.
[31] *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

defendants have not established that it is sufficient, and rely upon clear hearsay to support their policy – i.e., that some unknown person from the local hospital told them to treat persons suffering withdrawals with over-the-counter medications. In this case, as in the *Lancaster* decision cited in *Thompson, supra*, there was "a 'total failure' to provide life saving medical treatment to a detainee suffering from" withdrawals.[32] As in *Lancaster*, "binding precedent placed the defendants on notice of the seriousness [of withdrawals from alcohol or drugs] and the need to obtain medical treatment for an inmate suffering from that condition."[33]

In further regard to individual liability, the plaintiffs have established, or at least presented questions of fact, as to whether Warden Adams acted with deliberate indifference to that risk.[34] Given the credibility concerns set forth above, there are questions of fact whether the Warden Adams was actually aware of the risk, yet consciously disregarded it.[35] Ultimately, the trier of fact could choose to believe Warden Adams, who has stated that he knew nothing about Mr. Rombach's medical needs; or the trier of fact could choose to believe the rest of the evidence – the evidence in the cell that Mr. Rombach had been vomiting; the evidence from Mr. Flot concerning the requests for medical attention; the evidence in the phone calls to Mrs. Rombach after her son's death. The trier of fact should, at trial, with an opportunity to examine the demeanor of Warden Adams, decide whether it chooses to believe that Warden Adams did not know about the requests for medical attention which were made to his employees while he was present at the jail. These are credibility determinations which cannot be made on a motion for summary judgment.

---

[32] *Lancaster*, 116 F.3d at 1426.
[33] *Id.*.
[34] *Id.* at 834, 114 S.Ct. 1970.
[35] *Id.* at 837, 839, 114 S.Ct. 1970.

Likewise, these credibility determinations cannot relieve Warden Adams of possible liability for Eighth Amendment violations against cruel and unusual punishment. The defendants admit the following in regard to the law governing such a claim:

> Prison conditions may be "restrictive and even harsh." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, the failure of prison or jail officials to provide for the basic human needs of prisoners may rise to the level of an Eighth or Fourteenth Amendment violation. Prison officials have a duty, in light of the Eighth Amendment's prohibition against cruel and unusual punishment to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Sanville v McCaughtry*, 266 F3d. 724, 733 (7th Cir. 2001) Whether a particular event or condition in fact constitutes "cruel and unusual punishment" is gauged against the "evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Prison officials may be held liable under the Eighth Amendment for denying humane conditions of confinement if it can be proved that they **knew** inmates faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994) (added emphasis).[36]

Whether denying medical treatment to one suspected of suffering from drug withdrawals is in keeping with "evolving standards of decency that mark the progress of a maturing society" is a question of fact for trial. In light of the conflicting evidence and credibility concerns surrounding the defendants and their employees, it is a question for the trier of fact to determine at trial whether Warden Adams knew of the possible harm, or whether he is to be believed if he says he does not.

Despite the fact that Mr. Rombach died of a perforated ulcer, he exhibited symptoms of drug detox; he and other inmates verbalized his need for medical attention; and the policy of the defendants to treat with over-the-counter remedies exhibited deliberate indifference, or at least raises a question of fact regarding deliberate indifference. Questions of fact also exist as to whether the requests by Mr. Rombach and other for medical attention were ignored. Had Mr. Rombach been treated for what defendants believed was drug withdrawals, the true nature of his malady may have been discovered and he would not have suffered the agonizing death he suffered over the

---

[36] Doc. 29-1, p. 18.

course of three days' confinement at the defendants' jail.

Thus, in regard to Warden Adams' individual liability, the plaintiffs respectfully aver that there can be no question that Rombach "had a clearly established Fourteenth Amendment right not to be denied, by deliberate indifference, attention to his serious medical needs."[37] He had a clearly established right under the Eighth Amendment to be free from cruel and unusual punishment. Precedent in existence prior to 2015 established that persons suffering from drug withdrawals have a serious medical need. Further, there are questions of fact as to whether Warden Adams' conduct violated a constitutional right of Mr. Rombach. Given these two factors, Warden Adams has not established that he is entitled to qualified immunity, and there are questions of fact as to whether he is liable in his individual capacity for deliberate indifference to Mr. Rombach's serious medical needs. Under the circumstances, the motion by Warden Adams to be granted qualified immunity or otherwise to be dismissed from this litigation in his individual capacity should be denied.

### C.     MUNICIPAL, OR *MONELL*, LIABIILTY

The Court in *Lawson, supra*, also addressed municipal, or *Monell*, liability:

A municipality is liable under § 1983 only if three requirements are met. First, the municipality must have "an official policy, practice, or custom" which could subject it to § 1983 liability. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Second, the official policy must be linked to the constitutional violation. *Id.* Finally, the official policy must reflect the municipality's deliberate indifference to that injury. *Hare,* 74 F.3d at 649 n. 4, citing *Farmer,* 511 U.S. at 841, 114 S.Ct. 1970.

An "official policy" for § 1983 purposes may be either a written policy or "a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984) (en banc). …

Secondly, there must be evidence establishing a direct causal link between the official policy and the constitutional violation. The policy must be the "moving force" behind the

[37] *Id.*, citing Hare *v. City of Corinth,* 74 F.3d 633, 650 (5th Cir.1996) (en banc).

constitutional violations. *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001).
…

Finally, the municipality must maintain its official policy with deliberate indifference to a constitutionally protected right. Unlike the deliberate indifference standard applied to individual employees, this standard is an objective one; it considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights. *Farmer,* 511 U.S. at 841, 114 S.Ct. 1970; *Hare,* 74 F.3d at 643 n. 4. Therefore, constructive notice is adequate. *Id.*[38]

Municipalities can also be held liable for "episodic acts or omissions," claims for which

are examined under the following guidelines:

With an episodic-act-or-omission claim, "the complained-of harm is a particular act or omission of one or more officials." *Scott,* 114 F.3d at 53. In such cases, a plaintiff "complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id.* For purposes of imposing liability on a defendant in his or her *individual* capacity in such a case, a pretrial detainee must establish that the defendant acted with subjective deliberate indifference. *Id.* A person acts with subjective indifference if (1) "he [or she] knows that an inmate faces a substantial risk of serious bodily harm," and (2) "he [or she] disregards that risk by failing to take reasonable measures to abate it." *Anderson v. Dallas Cty., Tex.*, 286 Fed.Appx. 850, 860 (5th Cir.2008) (citing *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir.2006)).

To establish liability on a defendant in his or her official capacity, thereby holding a municipality accountable for the constitutional violation, the detainee "must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights." *Scott,* 114 F.3d at 54. The test for this form of indifference "considers not only what the policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Corley v. Prator,* 290 Fed.Appx. 749, 750 (5th Cir.2008) (relying on *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir.2002)).[39]

## 1.      Defendant's policies

In this instance, the defendants believed that Mr. Rombach was suffering from heroin

withdrawals.  This is admitted by Warden Adams, who states in his affidavit that

---

[38] *Lawson v. Dallas County*, 286 F.3d 257, 263-64 (5th Cir. 2002).
[39] *Cleveland v. Gautreaux*, 198 F.Supp.3d 717, 741 (M.D. La. 2016)

at some point the jail personnel learned that Rombach was experiencing withdrawal symptoms related to his voluntary consumption of illicit drugs. …

Rombach admitted to the jail personnel that he was withdrawing from heroin…[40]

There is also evidence that the defendants had a policy – or at least a "a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy"[41] – regarding the treatment of detainees who were suspected of being in a state of drug detoxification or withdrawal. Warden Adams described the policy as follows:

> Over the course of several years, the nearby hospital medical providers have routinely explained to the jail facility and me that there is no real treatment of withdrawal symptoms and it is sufficient for the jail to observe the inmate in withdrawal and provide plenty of hydration, aspirin, and malox-type products to assist the inmate with symptoms experienced in going through the withdrawal. The medical facility is a block away and is available if and when something emergent and/or unusual occurs with an inmate in withdrawals or for any other reason.[42]

Leaving aside the fact that Warden Adams statement is based upon pure hearsay, suffice it to say that the unwritten policy (since it was not contained in the written policies provided by the defendants during discovery) – or, as stated in *Webster, supra*, the "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy" – is that inmates who are believed to be suffering from drug withdrawals are treated with over-the-counter remedies. This policy was confirmed by several employees: Lisa Erwin,[43] Lesley Knight,[44] and Louis Clark.[45]

---

[40] Doc. 29-5, pp 2-3, ¶¶ 6 and 8
[41] *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984) (en banc).
[42] Doc. 29-5, p. 4, ¶ 13.
[43] Ex. 4, Deposition of Lisa Erwin, p. 22, l. 24 to p. 23, l. 21
[44] Ex. 5, Deposition of Lesley M. Knight, p. 13, l. 13 to p. 14, l. 15
[45] Ex. 6, Deposition of Louis Edward Clark, p. 30, ll. 10-17

Thus, the plaintiffs respectfully assert that it is clear that the defendants the municipality had "an official policy, practice, or custom" which could subject it to § 1983 liability. Their policy for the care of persons suspected of suffering from drug withdrawal or detox, similar to their suspicions about the decedent, Gregory Rombach, was to treat this serious medical need with over-the-counter medications.

### 2. Causal link or "moving force"

The plaintiffs respectfully aver that there is a causal link between the official policy and the constitutional violation: the violation is the denial of possibly life-saving care to persons suspected of suffering withdrawals, and its attendant deliberate indifference to detainees' serious medical needs. This violation resulted from the defendants' policy of treating persons suspected of suffering withdrawals with mere over-the-counter medications. The plaintiffs respectfully aver that this policy was the "moving force" behind the unconstitutional denial of medical care to Mr. Rombach:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.[46]

At a minimum, questions of fact exist in regard to this causal connection.[47]

### 3. Objective deliberate indifference to the detainee's constitutional rights.

---

[46] *Monell,* 436 U.S. at 694, 98 S.Ct. at 2038.

[47] Throughout their memorandum, the defendants mix statement regarding their knowledge or the knowledge of Mr. Rombach that he had a duodenal ulcer with the fact that they believed Mr. Rombach was suffering (and her verbalized that he was suffering) from drug withdrawals. It is not necessary for Mr. Rombach or anyone else to have diagnosed Mr. Rombach with a duodenal ulcer. The examination of the defendants' actions in this case is based upon what the defendants "subjectively" believed, and the subjectively believed Rombach was suffering from drug withdrawals.

The plaintiffs also respectfully assert that there is sufficient evidence to, at a minimum, create genuine issues of material fact, as to whether the defendants in this case acted with deliberate indifference. As previously stated, to hold a municipality liable for a constitutional violation,

> the detainee "must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights." *Scott*, 114 F.3d at 54. The test for this form of indifference "considers not only what the policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Corley v. Prator*, 290 Fed.Appx. 749, 750 (5th Cir.2008) (relying on *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir.2002)).[48]

Given that the defendants' employees believed Mr. Rombach was suffering from drug withdrawals, or was detoxing, one must question the defendants' policy in regard to the medical treatment afforded such persons. It was not the policy of the defendants to take such persons out of the jail for treatment; it was their policy to give such persons over-the-counter remedies. This was done in spite of the fact that the defendants (and hence, the municipal policy makers) "should have known" that drug withdrawal is a serious medical condition, and has been recognized as such prior to July of 2015. As previously stated above regarding individual liability:

> Further, numerous courts have held that the symptoms of withdrawal constitute a serious medical need. *See Foelker v. Outagamie County,* 394 F.3d 510, 513 (7th Cir.2005) (prisoner suffering from methadone withdrawal, who defecated on himself and believed he was at a "wedding hotel," had serious medical need); *Sylvester v. City of Newark,* 120 Fed. Appx. 419, 423 (3d. Cir.2005) ( "There is no real dispute that Vargas was suffering from acute withdrawal with excessive vomiting, a serious medical need"); *Mayo v. County of Albany,* 2009 WL 935804, *4 (N.D.N.Y.2009) (withdrawal from alcohol and drugs is a serious medical need); *Estate of Perry v. Boone County Sheriff,* 2006 WL 1587799, *3 (S.D.Ind.2006) (alcohol withdrawal accompanied by seizures constitutes serious medical need); *Gonzales v. Cecil County, Maryland,* 221 F.Supp.2d 611, 616 (D.Md.2002) (heroin withdrawal presents serious medical need).[49]

---

[48] *Cleveland v. Gautreaux*, 198 F.Supp.3d 717, 741 (M.D. La. 2016)

[49] *Quatroy v. Jefferson Parish Sheriff's Office*, Nos. 04-451 and 04-1425 (E.D. La. 5/14/2009) [Vance, J.], 2009 WL 1380196 at *9.

In this case, the officials **subjectively** believed that Rombach was detoxing from drug use, i.e., heroin. Regardless of the fact that he may have died of a perforated duodenal ulcer, the municipal employees refused him treatment and/or treated him with over-the-counter remedies (i.e., castor oil) for constipation, which they believed to be one of the symptoms of drug detoxification. This resulted from the policy of the jail to treating detainees suffering from drug withdrawals with over-the-counter remedies rather than medical treatment at a medical facility such as a hospital.

If it is recognized, as other courts have recognized, that a detainee who the jailers, as in this case, subjectively believe is suffering from drug withdrawals has a "serious medical need," one need look no further than Warden Adams' statement regarding the manner in which the defendants were "deliberately indifferent" to this serious medical need or, for that matter, any other variety of medical need:

> The City of Bogalusa budget is extremely limited and the City cannot afford to send every new inmate to be assessed for unknown health conditions that they fail to report to the jail personnel. They City also cannot afford to send every new inmate that experiences withdrawal symptoms to the hospital to be evaluated either.[50]

In this matter, there was no "unknown health condition." The defendants admit that they actually believed Mr. Rombach was suffering drug withdrawals. His fellow inmate, Mr. Flot, has declared that requests were made to numerous jail personnel, by Mr. Rombach and Mr. Flot, to take Mr. Rombach to a hospital or get him some form of medical care. The evidence also shows that the defendants had a policy of failing to provide actual medical care to detainees suffering from drug withdrawals, instead preferring to treat this serious medical need with over-the-counter remedies. These facts are sufficient to create a question of fact as to whether there is municipal liability in this case, which, as previously stated, is established under the following guidelines:

---

[50] Doc. 29-5, p. 4, ¶ 15.

To establish liability on a defendant in his or her official capacity, thereby holding a municipality accountable for the constitutional violation, the detainee "must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights." *Scott,* 114 F.3d at 54. The test for this form of indifference "considers not only what the policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Corley v. Prator,* 290 Fed.Appx. 749, 750 (5th Cir.2008) (relying on *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir.2002)).[51]

Despite the fact that Mr. Rombach died of a perforated ulcer, he exhibited symptoms of drug detox; he and other inmates verbalized his need for medical attention; and the policy of the municipal defendants to treat with over-the-counter remedies exhibited deliberate indifference, or at least raises questions of fact regarding deliberate indifference. Had Mr. Rombach been treated for what defendants believed was drug withdrawals, the true nature of his malady may have been discovered and he would not have suffered the agonizing death he suffered over the course of three days' confinement at the defendants' jail.

## IV.     THE DEFENDANTS HAVE FAILED TO ESTABISH THAT THEY HAVE NOT VIOLATED THE DUE PROCESS CLAUSE'S PROHIBITATION AGAINST PUNISHMENT OF PRETRIAL DETAINEES IN THE CONDITIONS OF THEIR CONFINEMENT.

It is undisputed in this matter that Mr. Rombach was a pretrial detainee. As a pretrial detainee,

the substantive limits on state action set by the Due Process Clause provide that the state cannot punish a pretrial detainee." *Reed,* 795 F.3d at 462 (citing *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447, 466 (1979)). Any "punishment" of a pretrial detainee, therefore, will run afoul of the Constitution. *Duvall v. Dallas Ctty., Tex.,* 631 F.3d 203, 206 (5th Cir.2011).[52]

In the *Cleveland* case, Judge DeGravelles presented the following summary of the law regarding challenges to conditions of confinement:

---

[51] *Cleveland v. Gautreaux*, 198 F.Supp.3d 717, 741 (M.D. La. 2016)
[52] *Cleveland, supra,* 198 F.Supp.3d at 733 (M.D. La. 2016)

As *Reed* explains, "challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.' " *Reed,* 795 F.3d at 463 (quoting *Hare v. City of Corinth, Mississippi,* 74 F.3d 633, 644 (5th Cir.1996)). Though courts "routinely rejected conditions of confinement claims well into ... [the 20th] century," *Helling v. McKinney,* 509 U.S. 25, 39, 113 S.Ct. 2475, 2484, 125 L.Ed.2d 22, 35 (Thomas, J., dissenting) (internal quotation marks omitted), no debate now beclouds their validity, *see Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156, 167 (1992). Of course, the punitive and hence forbidden "conditions, practices, rules, and restrictions can be explicit." *Id.* (relying on *Shepherd,* 591 F.3d at 452). Yet, such a condition may also "reflect an unstated or de facto policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Id.* (alteration in original) (internal quotation marks omitted) (citing *Hare,* 74 F.3d at 644–45). Regardless, "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.* (internal quotation marks omitted) (citing *Bell*, 441 U.S. at 539, 99 S.Ct. 1861); *accord Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir.2004).

Axiomatically, "[t]he medical care a prisoner receives is just as much a 'condition' of his [or her] confinement as the food he [or she] is fed." *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271, 282 (1991). Furthermore, as a matter of law, "[a] State's imposition of a rule or restriction during pretrial confinement manifests an avowed intent to subject a pretrial detainee to that rule or restriction," and "even where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices." *Hare,* 74 F.3d at 644; *accord Reed,* 795 F.3d at 463. Consequently, "a true jail condition case starts with the assumption that the State intended to cause the pretrial detainee's alleged constitutional deprivation." *Hare,* 74 F.3d at 644–45. Though not expressly, "[t]he Fifth Circuit has at least suggested that condition-of-confinement claims are cognizable against individual actors only in their official capacities." *Nagle v. Gusman,* No. 12–1910 Section "R"(2), 2016 U.S. Dist. LEXIS 23747, at *16–17, 2016 WL 768588, at *5 (E.D.La. Feb. 26, 2016) (collecting cases).[53]

In this matter, the plaintiffs have presented evidence – and the defendants admit – that there was a policy of treating persons suspected of going through withdrawals with over-the-counter medications, and the plaintiffs have established that there was pre-existing case law which established that suffering withdrawals presented a serious medical need. Thus, as Judge DeGravelles stated, even if the defendants in this case may not have wanted "to subject a detainee

---

[53] *Id.* at 733-34.

to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices."[54]

If intent to subject a pretrial detainee to "inhumane conditions of confinement or abusive jail practices" can be presumed when the detainee is incarcerated "in the face of such known conditions and practices," then the plaintiffs respectfully aver that there are questions of fact in this matter regarding whether the defendants in this case subjected the decedent to inhumane conditions of confinement when he was incarcerated in a facility which refused to provide necessary and life-saving treatment to persons suffering from withdrawals.

The plaintiffs respectfully aver that there are genuine issues of material fact as to whether the defendants' policies subjected the plaintiff to "inhumane conditions of confinement or abusive jail practices" in violation of the Due Process clause of the U.S. Constitution and subjected him to cruel and unusual punishment. The defendants' motion in this regard should be denied.

## V. THERE ARE GENUINE ISSUES OF MATERIAL FACT REGARDING THE DEFENDANTS' NEGLIGENCE UNDER STATE LAW AND THEIR RESPONSIBILTY FOR THE NEGLIGENCE OF THEIR EMPLOYEES.

The defendants Motion for Summary Judgment also seeks dismissal of plaintiffs' state law claims for negligence under La. C.C. Arts. 2315, et seq. Under Louisiana Civil Code article 2320, an employer is liable for the torts committed by its employees if, at the time, the employee was acting within the course and scope of his employment.[55] Discretionary immunity does not apply to vicarious liability.[56]

The defendants' arguments in opposition to plaintiffs' state law claims are repeated several times at pages 20-22 of the Memorandum in Support:

---

[54] *Id.*, citing *Hare,* 74 F.3d at 644; *accord Reed,* 795 F.3d at 463.

[55] La. Civ. Code art. 2320; *Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996).

[56] *Hoffpauir v. Columbia Cas. Co.*, No. 12-403 (M.D. La. 11/5/2013), 2013 WL 5934699, at *13.

The evidence proves that Rombach never informed Bogalusa through any employee that he had an ulcer, was suffering from an ulcer or that he needed medical attention. In addition, Rombach never told his family in their telephone conversations that he had an ulcer or any other medical condition, that he was suffering, or that he needed medical attention.

The plaintiffs respectfully assert that there are clearly questions of fact regarding whether the City of Bogalusa, through its employees, were informed that Mr. Rombach needed medical attention and that he was suffering. According to the declaration of Christopher Flot:

> On the second day of his incarceration, he [Mr. Rombach] was placed in a private cell **after he repeatedly called for medical attention. I heard Greg ask to be taken to a hospital for medical attention.** I heard Mr. Otis, one of the wardens, tell Greg "Heck no we are not taking you to the hospital. I told you that."[57]

Later in his declaration, Mr. Flot states the following:

> I personally heard Greg tell Mr. Otis, Mr. Lewis and Ms. Knight that he did not feel well and he wanted to go to the hospital. I personally told Mr. Otis, Mr. Lewis & Ms. Knight that Greg did not feel well, was not eating and was vomiting and he needed a doctor.[58]

At the time Mr. Rombach died, he was incarcerated and thus under the control of the defendants and their employees. Decisions regarding the provision or non-provision of life saving care rested with the defendants and their employees, not Mr. Rombach. In Louisiana, courts utilize the normal negligence duty/risk analysis in examining the negligence of prison officials. *See e.g., Washington v. Gusman*, 15-177 (La.App.4th Cir. 10/14/15), 183 So.3d 510. "[P]enal authorities have a duty to use reasonable care in preventing harm after they have reasonable cause to anticipate it."[59]

There are questions of fact whether the withholding of medical care in this case caused Mr. Rombach undue suffering after he and others requested medical attention, and whether this ultimately led to his death. Despite the fact that Mr. Rombach died of a perforated ulcer, he

---

[57] Exhibit 2 [Emphasis added].
[58] Id.
[59] *Washington*, 183 So.3d at 526-27.

exhibited symptoms of drug detox; he and other inmates verbalized his need for medical attention. Had Mr. Rombach been treated for what defendants believed was drug withdrawals, the true nature of his malady may have been discovered and he would not have suffered the agonizing death he suffered over the course of three days' confinement at the defendants' jail. The trier of fact could determine that the failure on the part of the defendants' employees in this case to act constitutes negligence under Louisiana law, for which the municipal defendants and their officers are liable under the theory of *respondeat superior* as the employer.

For these reasons, the defendants' Motion for Summary Judgment in regard to plaintiffs' state law claims should be denied.

## CONCLUSION

The plaintiff respectfully request that the Court defer ruling on the present motion, until such time as the plaintiffs may file a Second Amended Complaint to add additional defendants, against whom prescription has been interrupted by the filing of the pending complaints herein.

In regard to summary judgment, the plaintiffs respectfully assert that there are serious issues surrounding the credibility of the defendants and their employees. These credibility issues alone should suffice to deny the defendants' Motion for Summary Judgment. Leaving aside these serious and significant credibility concerns, the plaintiffs respectfully assert that there are genuine issues of material fact as to whether the defendants – including Warden Adams and the defendants' employees whom the plaintiffs now seeks to add as defendants – were deliberately indifferent to the serious medical needs of Gregory Rombach prior to his death. There is conflicting evidence as to whether the defendants and their employees were advised of Mr. Rombach's need for medical care and refused to provide such care, or otherwise ignored the requests.

In addition, there are questions of fact as to whether the defendants' policy of treating

persons suspected of suffering from drug withdrawals with over-the-counter remedies rather than providing necessary medical care at a hospital or with a physician constitutes deliberate indifference to serious medical needs and whether that policy caused or contributed to the death of Gregory Rombach, and whether a policy of treating persons suspected of suffering from drug withdrawals subjected pretrial detainees such as Gregory Rombach to inhumane conditions of confinement, in violation of the Due Process clause.

Finally, there are questions of fact as to whether the defendants and/or their employees were negligent under state law for failure to exercise reasonable care to provide necessary medical care to Gregory Rombach, whether this negligence contributed to the death of Gregory Rombach, and whether the defendant officials are liable under the theory of *respondeat superior*.

For all of the above and foregoing reasons, the defendants' Motion for Summary Judgment should be denied.

RESPECTFULLY SUBMITTED:

__s/ David C. Whitmore_____
LAWRENCE BLAKE JONES (7495)
DAVID C. WHITMORE (17864)
BLAKE JONES LAW FIRM, LLC
701 Poydras Street, Suite 4100
New Orleans, LA  70139
Telephone:  (504) 525-4361
Facsimile:  (504) 525-4380

## CERTIFICATE OF SERVICE

I do hereby certify that on the 20th day of February, 2018, a copy of the above and foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record that have elected e-notification by operation of the court's electronic filing system.  I further certify that, on the aforementioned date, I also served a copy of the foregoing pleading upon all counsel of record who are non-CM/ECF participants via facsimile transmission and/or via hand delivery and/or via the United States mail, postage prepaid and properly addressed.

s/ David C. Whitmore