UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE ESTATE OF GREGORY ROMBACH AND DONNA MAHL ROMBACH, on behalf of minor child, D.A.R.<br><br>VERSUS<br><br>JOE CULPEPPER, *et al.* | CIVIL ACTION<br><br>NO. 16-556<br><br>SECTION M (3) |

### ORDER & REASONS

Before the Court is a motion for summary judgment filed by defendants the City of Bogalusa ("Bogalusa"), and Joe Culpepper (Bogalusa Chief of Police), Scott Adams (Warden, Bogalusa City Jail), Wendy O'Quin Perette (Mayor of Bogalusa), Otis Taylor (Bogalusa employee), Louis Clark (Bogalusa employee), Lesley Knight (Bogalusa employee), Lisa Erwin (Bogalusa employee), Leonard Powell (Bogalusa employee), and Lashonda Payton (Bogalusa employee), in their official and individual capacities (collectively, "Defendants").[1] Plaintiffs the Estate of Gregory Rombach and Donna Mahl Rombach, on behalf of the minor child, D.A.R. (collectively, "Plaintiffs"), respond in opposition,[2] and Defendants reply in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion for summary judgment.

**I.     BACKGROUND**

This case arises out of Gregory Rombach's death while in custody at the Bogalusa City Jail on July 9, 2015. The pertinent facts were recited by the Court in a previous Order &

---

[1] R. Doc. 94.
[2] R. Doc. 95.
[3] R. Doc. 98.

Reasons:[4]

> … At 1:52 a.m. on Monday, July 6, 2015, Mr. Rombach was arrested for shoplifting from a Walmart. During booking, the police learned that there was a warrant for Mr. Rombach's arrest for failure to appear. Mr. Rombach was subsequently arrested per the warrant. At 2:55 a.m. on July 6, 2015, Mr. Rombach filled out a medical form, indicating that he had no medical conditions other than an allergy to penicillin. In the afternoon of July 6, 2015, Mr. Rombach was sentenced for failure to appear to fifteen days in custody or a $250.00 fine. Mr. Rombach's arraignment for the shoplifting arrest was set for one week later, on July 13, 2015. Mr. Rombach was then returned to the custody of the Bogalusa City Jail.
>
> Mr. Rombach made three telephone calls from jail before he passed away. He first called his mother in the early hours of July 6, 2015, to tell her that he had been arrested and to ask that she bail him out of jail. He called his parents again, likely on July 7, 2015, when he spoke with his father. When asked how he was doing, Mr. Rombach responded, "Not so good, Dad." Mr. Rombach also called his brother, but the record does not indicate when that call took place.
>
> At some point after booking, Mr. Rombach told jail personnel that he was withdrawing from heroin. Scott Adams, the warden of the jail, states in his affidavit that a nearby hospital told him that "there is no real treatment of withdrawal symptoms and it is sufficient for the jail to observe the inmate in withdrawal and provide plenty of hydration, aspirin, and malox-type products to assist the inmate with the symptoms experienced in going through withdrawal." According to Warden Adams, "Rombach requested and was given a small dose of castor oil for relief of constipation." There is no other evidence in the record of whether and how Mr. Rombach was treated for his withdrawal symptoms.
>
> Warden Adams' employees had similar understandings of what jail policy required them do when an inmate was suffering from withdrawal symptoms. Louis Clark, a jail employee, testified in his deposition that inmates experiencing withdrawal symptoms are given "Imodium for diarrhea[,]" "ibuprofen for pain, [and] muscle spasm, and Emetrol [for] ... nausea." Lisa Erwin, another jail employee, echoed Clark's testimony in her own deposition when she testified that "[t]he only thing [the jail] give[s] [inmates] now is Emetrol, Imodium, and ibuprofen." Erwin went on to explain that she didn't have "any protocols" for inmates going through withdrawal, but agreed with Warden Adams that the nearby hospital had recommended treatment with over-the-counter medications. Erwin did not know if the hospital had told the jail how to know when an inmate's withdrawal symptoms are severe enough to warrant professional medical attention.
>
> At some point after informing jail personnel that he was in withdrawal,

---

[4] This matter was originally assigned to a different section of this Court and was realloted to this section upon the confirmation of the undersigned. R. Doc. 71.

Mr. Rombach was moved to a private padded cell. Jail personnel said that the move was "because [Mr. Rombach] was being disruptive" and so jail personnel wanted to "observe [Mr. Rombach] better." Jail personnel state that when questioned about his symptoms while in the private padded cell, Mr. Rombach "said he was fine and requested to go back to his cell[;]" a request that was accommodated. Christopher Flot, an inmate who was in the jail at the same time as Mr. Rombach, states that Mr. Rombach "was placed in a private cell after he repeatedly called for medical attention." Mr. Flot states that Mr. Rombach was moved to the private cell on Mr. Rombach's second day of incarceration, which was likely July 7, 2015.

Mr. Flot's declaration provides other details about Mr. Rombach's time in jail. According to Mr. Flot, Mr. Rombach was assigned to the cell next to his, where the inmates were confined from 10:00 p.m. to 5:00 a.m. every day. Both Mr. Flot and Mr. Rombach had access to the same day room when not confined to their cells. Mr. Flot states that Mr. Rombach ate "very little food, which he vomited up." Mr. Flot heard Mr. Rombach "ask to be taken to a hospital for medical attention." According to Mr. Flot, a prison employee who heard Mr. Rombach's request said that Mr. Rombach could not go to the hospital. Mr. Flot also states in his declaration that he "personally told Mr. Otis, Mr. Lewis, [and] Ms. Knight that [Mr. Rombach] did not feel well, was not eating and was vomiting, and [that Mr. Rombach] needed a doctor." Mr. Flot also declares that the jail employees "did not make regular inspections of the cells when [the inmates] were on lockdown at night."

Another inmate was also aware that Mr. Rombach was not feeling well. Chadwick Hart, who either shared a cell with Mr. Rombach or Mr. Flot the night that Mr. Rombach passed away, told Detective David Miller that Mr. Rombach was throwing up at 11:00 p.m. on July 8, 2015, and that Mr. Rombach continued to throw up throughout the night. These statements are consistent with the prison report of Mr. Rombach's death. When Detective Miller arrived at Mr. Rombach's cell on July 9, 2015 to investigate Mr. Rombach's death earlier that day, he saw vomit in the toilet in the cell. An autopsy was subsequently conducted; the cause of death was a "perforated duodenal ulcer with peritonitis." The autopsy also revealed that Mr. Rombach had amphetamine, methamphetamine, and opiates in his system when he died.

In January 2016, Plaintiffs filed the instant lawsuit. There are two distinct sets of defendants. All defendants have been sued in their individual and official capacities. One set is a group of John and Jane Does, who are described as employees of "the Bogalusa Police Department and/or of the City of Bogalusa and its jail." The Amended Complaint alleges that these unnamed defendants are liable to Plaintiffs under 42 U.S.C. § 1983 for violating the [Fourth] and Fourteenth Amendments to the United States Constitution by denying Mr. Rombach necessary medical care, which resulted in his death. The Amended Complaint also alleges that these unnamed defendants are liable to Plaintiffs under Louisiana Civil Code Articles 2315, 2315.1, and 2316 for causing Mr. Rombach's death.

3

The other set of Defendants is a group of three named individuals: Joe Culpepper, the Chief of Police in Bogalusa; Scott Adams, the Warden of the Bogalusa City Jail; and Wendy O'Quin Perrette, the Mayor of the Bogalusa. The Amended Complaint alleges that the named defendants are liable to Plaintiffs for facilitating Mr. Rombach's death through negligent hiring and training and failure to develop appropriate policies for inmates with medical needs. These allegations also appear to state a claim for municipal liability under the doctrine established by the United States Supreme Court in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The Amended Complaint also alleges that that the named defendants are liable for the actions of the unnamed defendants "under the principle of respondeat superior."

The named defendants then moved for summary judgment. Later that same day, Plaintiffs filed a motion for leave to file an amended complaint that properly names the John and Jane Doe defendants. The motion was referred to Magistrate Judge Wilkinson, who denied the motion without prejudice. Plaintiffs then filed a motion to continue trial, with the intention of reurging their motion for leave to file an amended complaint if a continuance was granted. The motion to continue trial was granted and Plaintiffs were given one week to file another motion for leave to file an amended complaint.[5]

Because the proposed amended complaint did not affect Plaintiffs' claims against the originally-named defendants (Culpepper, Adams, and Perrett), the Court ruled on the motion for summary judgment that was before it when the amended complaint was filed.[6] The Court held that Culpepper, Adams, and Perrett were entitled to qualified immunity as to the individual-capacity claims brought against them under § 1983, because Plaintiffs "failed to raise a genuine issue of material fact about whether any of the named Defendants violated Mr. Rombach's constitutional rights."[7] Accordingly, those claims were dismissed with prejudice.[8] The Court also granted summary judgment in favor of Culpepper, Adams, and Perrett dismissing with prejudice the Louisiana state-law negligence claims against them, holding that they were immune from suit for such claims because there was no evidence that they were personally

---

[5] R. Doc. 52 at 1-7 (citations omitted).
[6] *Id.* at 7.
[7] *Id.* at 12.
[8] *Id.* at 17.

4

involved in the decision not to provide Rombach with additional medical care.[9]  Further, the Court denied the motion without prejudice to re-urging it once the amended complaint was filed as to all claims against the jail employees and Plaintiffs' official-capacity claims against Culpepper, Adams, and Perrett, which are municipal liability claims under *Monell*.[10]

On March 26, 2018, Plaintiffs filed their second amended complaint adding Bogalusa as a defendant and naming the following jail employees as defendants in their individual and official capacities: Otis Taylor, Louis Clark, Lesley Knight, Lisa Erwin, Leonard Powell, and Lashonda Payton (collectively, "jail employee defendants").[11]  Plaintiffs allege that the jail employee defendants are liable under § 1983 for violating the Fourth and Fourteenth Amendments and Louisiana Civil Code articles 2315, 2315.1, and 2316, by refusing to provide necessary medical attention to Rombach, which resulted in his death.[12]  Plaintiffs further allege that the jail employee defendants knowingly and intentionally: (1) failed to respond to Rombach's complaints and need for medical care and were otherwise deliberately indifferent thereto; (2) failed to ensure that Rombach had prompt, adequate and necessary medical care; (3) caused Rombach to suffer physically and psychologically; (4) orchestrated, conducted, condoned, ratified, and participated in the infliction of cruel and unusual punishment; and (5) failed to prevent each other from violating Rombach's rights.[13]  With respect to the *Monell* claims, Plaintiffs allege that Bogalusa, and Culpepper, Adams, and Perrette, in their official capacities, have a custom or policy of negligent and inadequate hiring, training, supervision, and retention of jail employees in responding to medical complaints of detainees, which resulted in

---

[9] *Id.* at 15-16.
[10] *Id.* at 15.
[11] R. Doc. 60 at 2-3.
[12] *Id.* at 4-5.
[13] *Id.* at 5.

5

deliberate indifference to the medical need of persons in their care and custody, including those suspected of suffering from drug withdrawals.[14]

## II. PENDING MOTION

The jail employee defendants argue that they are entitled to qualified immunity as to Plaintiffs' individual-capacity claims brought against them under § 1983 because plaintiffs cannot prove "that any specific individual defendant committed any specific individual acts or inactions that intentionally caused and/or intentionally contributed to the death of Rombach."[15] Defendants further allege that Plaintiffs' § 1983 official-capacity claims fail because there is no evidence of a constitutional violation or unconstitutional policy, both of which are required to prevail under *Monell*.[16] Defendants further argue that they are entitled to qualified immunity as to the state-law claims, and there is no evidence of deliberate indifference or cruel and unusual punishment.[17]

In opposition, Plaintiffs argue that there are disputed issues of material fact regarding whether individual officers acted with deliberate indifference to inflict cruel and unusual punishment.[18] Plaintiffs contend that the jail employee defendants knew that Rombach was suffering from heroin withdrawal symptoms, which they contend is a serious medical need, and ignored his requests for medical attention.[19] According to Plaintiffs, had Rombach been taken to the hospital, the true nature of his condition would have been discovered and he could have been treated.[20] Plaintiffs further argue that there are questions of fact regarding Defendants' municipal, or *Monell*, liability because Defendants should have known that their policy regarding the treatment of drug withdrawal symptoms with over-the-counter medication was deliberately

---

[14] *Id.* at 5-6.
[15] R. Doc. 94-1 at 2-13.
[16] *Id.* at 14-16.
[17] *Id.* at 16-24.
[18] R. Doc. 95 at 6-14, 17-20.
[19] *Id.*
[20] *Id.* at 7-8.

6

indifferent to a serious medical need.[21]  Finally, Plaintiffs argue that Defendants have not shown that they are entitled to qualified immunity under state law.[22]

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are

---

[21] *Id.* at 14-19.
[22] *Id.* at 20-24.

insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Section 1983 Claims

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42

U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 n.3 (5th Cir. 1999). To pursue a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260 (5th Cir. 2008); *see also West v. Atkins*, 487 U.S. 42, 50 (1988).

Section 1983 claims can be brought against a public official in his or her individual or official capacity. *Hafer v. Melo*, 502 U.S. 21, 23 (1991). The governmental entity that the official serves is the real-party-in-interest in an official-capacity suit, and such claims are analyzed under the *Monell* doctrine. *Id.* at 25. To succeed on an individual-capacity § 1983 claim, a plaintiff must produce evidence establishing that the defendant, while acting under color of state law, was personally involved in the deprivation of a right secured by the laws or Constitution of the United States, or that the defendant's wrongful acts were causally connected to such a deprivation. *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

### C. Qualified Immunity

The jail employee defendants contend that they are entitled to qualified immunity as to Plaintiffs' § 1983 claims against them in their individual capacities. Qualified immunity protects a government official from liability for civil damages if his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Charlot v. City of Hous.*, 757 F. App'x 310, 312 (5th Cir. 2018) (quotation omitted). The doctrine allows government officials "breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 313 (quotation omitted). The Fifth Circuit has explained the purpose of the doctrine of

qualified immunity this way: "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity involves not only immunity from liability, but also immunity from suit.

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)).  "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* (citing *Michalik*, 422 F.3d at 262).  Thus, "[t]he plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor." *Id.* (citation omitted).

In evaluating a claim of qualified immunity, courts consider: "(1) whether an officer's conduct violated a federal right and (2) whether this right was clearly established." *Charlot*, 757 F. App'x at 313 (quotation omitted).  "A right is clearly established when controlling authority – or a robust consensus of persuasive authority – defines the contours of the right in question with a high degree of particularity." *Id.* (internal quotation marks and brackets omitted).  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 135 S.Ct. 2042, 2044 (2015) (quotation omitted).  It is not required that there be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  "Clearly established" means "settled law." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (meaning "it is dictated by 'controlling

Case 2:16-cv-00556-BWA-DPC   Document 99   Filed 08/03/20   Page 11 of 16

authority' or 'a robust consensus of cases of persuasive authority'"). Mere implication from precedent does not suffice. *Id.* at 590. As the Fifth Circuit instructs:

> "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 138 S. Ct. at 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In sum, [qualified immunity] "represents the norm, and courts should deny a defendant immunity only in rare circumstances." *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018).

*Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (citations shortened). The central concern is that "the official has fair warning that his conduct violates a constitutional right." *Delaughter v. Woodall*, 909 F.3d 130, 140 (5th Cir. 2018) (citation omitted).

Plaintiffs' complaint purports to allege violations of the Fourth, Eighth, and Fourteenth Amendments related to lack of medical care to an inmate. The Eighth Amendment, which prohibits cruel and unusual punishment, is violated when prison officials show deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).[23] A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation omitted). Succeeding on a deliberate-indifference claim requires a plaintiff to show that "(1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Dyer*, 964 F.3d at 380 (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001)). A prison

---

[23] The principles of the Eighth Amendment are applicable to pretrial detainees under the Fourteenth Amendment, which "guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Thompson v. Upshur Cty.*, 245 F. 3d 447, 457 (5th Cir. 2001)). Thus, the same standard applies to claims of lack of medical care whether the prisoner is in a pre- or post-conviction status. *Converse v. City of Kemah*, 961 F.3d 771, 776 n.2 (5th Cir. 2020) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639, 650 (5th Cir. 1996)). At the time of his death, Rombach was imprisoned both posttrial on the failure-to-appear conviction, and pretrial on the shoplifting charge.

11

official's "knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

"Deliberate indifference is a difficult standard to meet; it will be found only where the prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Elliott v. Dean*, 249 F. App'x 333, 334 (5th Cir. 2007) (quoting *Farmer*, 511 U.S. at 847). Indeed, the Fifth Circuit has "consistently recognized … that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm.'" *Dyer*, 964 F.3d at 381 (quoting *Thompson*, 245 F.3d at 458-59). To succeed on such a claim, the plaintiff must demonstrate that the prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (quotation omitted).

In this case, Rombach was actually experiencing two apparently unrelated medical conditions, one known, the heroin withdrawal, and one unknown that caused his death, the perforated ulcer. At intake, Rombach did not report that he had an ulcer, and in fact, there is no evidence that anyone, including Rombach himself, knew about the condition. Thus, the jail employee defendants cannot be held responsible for alleged deliberate indifference to this serious medical need.

Plaintiffs argue instead that the jail employee defendants ignored Rombach's heroin withdrawal symptoms, which they contend was a serious medical need, and that had they not,

Rombach's ulcer would have been discovered and treated. Acute symptoms of substance withdrawal may be a serious medical need.[24] *Quatroy v. Jefferson Par. Sheriff's Office*, 2009 WL 1380196, at *9 (E.D. La. May 14, 2009); *Sylvester v. City of Newark*, 120 F. App'x 419, 423 (3d Cir. 2005); *see also Thompson*, 245 F.3d at 457 (post-2015 case); *Freeland v. Tarrant Cty.*, 789 F. App'x 406, 409 (5th Cir. 2019) (same). There is no evidence in the record regarding the expected symptoms of heroin withdrawal to serve as a baseline against which to compare the acuity of Rombach's alleged symptoms. Thus, the Court will assume for purposes of this Order & Reasons, without deciding, that Rombach exhibited acute symptoms of heroin withdrawal.

Even assuming that Rombach's heroin withdrawal symptoms rose to the level of a serious medical need, Plaintiffs have not presented adequate summary-judgment evidence that any of the jail employee defendants were deliberately indifferent to that need. Plaintiffs rely on the deposition testimony of Christopher Flot to prove deliberate indifference. Flot was an inmate at the jail at the time of Rombach's incarceration and death.[25] Flot testified at his deposition that Romboch begged some unnamed guards "to take him to the hospital because he was detox."[26] Flot also testified that, on the second day Rombach was in jail, Rombach asked Clark to take him to the hospital to get medicine to address his "detoxing," but Clark refused.[27] Flot also testified that Rombach made the same request of Clark the next day, which was again refused.[28] Although Flot testified that Rombach was not eating or drinking and was throwing up, Flot did

---

[24] Plaintiffs have not pointed to an Eighth or Fourteenth Amendment deliberate-indifference case where the imprisoned decedent was suffering from heroin withdrawal symptoms that masked another serious medical condition that was the ultimate cause of death. Accordingly, it is difficult to see how the constitutional right of which Plaintiffs complain can have been clearly established in 2015 at the time of the events in question.
[25] R. Doc. 95-3 at 2-3.
[26] *Id.* at 3.
[27] *Id.* at 6-7.
[28] *Id.* at 7.

not testify that any guard was aware of this.[29]  Flot further testified that Clark brought Rombach to the padded cell in the front of the jail.[30]

Neither Flot's deposition testimony, nor any other evidence in the record, establishes that any particular jail employee defendant, even Clark, was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Rombach existed due to his heroin withdrawal symptoms or any other condition.  Flot establishes that Clark, at most, knew that Rombach was experiencing symptoms of heroin withdrawal, but there is no information about exactly what Clark, or any other jail employee defendant, knew about the severity of those symptoms.  Further, Erwin testified at her deposition that she decided to move Rombach to the padded cell for his own safety.[31]  She was concerned that the other inmates would "jump" Rombach because he was banging on the door and hollering due to the heroin withdrawal.[32]  Erwin observed Rombach in the padded cell but does not remember anything specific about Rombach's condition from her observations.[33]  Moreover, Knight testified that she gave Rombach castor oil to treat a symptom of his substance withdrawal.[34]  There is no other mention of what any other jail employee knew or did prior to Rombach's death.

In sum, there is no evidence establishing that any particular jail employee defendant knew that Rombach may have been suffering from acute heroin withdrawal symptoms – much less the perforated ulcer that caused his death.  Nor is there any evidence that any particular jail employee defendant drew the inference that Rombach had a serious medical need.  As a result, the jail employee defendants are entitled to qualified immunity on Plaintiffs' individual-capacity § 1983 claims, and those claims are DISMISSED WITH PREJUDICE.

---

[29] *Id.*
[30] *Id.* at 12.
[31] R. Doc. 94-14 at 16-17.
[32] *Id.*
[33] *Id.* at 18.
[34] R. Doc. 94-15 at 15-16.

### D. Official-Capacity (*Monell*) Claims

To succeed on an official-capacity claim or claim against the governmental entity under *Monell*, the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quotation and citation omitted).

In the prior summary judgment ruling in this case, the Court held that:

> Plaintiffs have provided no evidence that Warden Adams' policy was deficient; observing inmates going through withdrawal, treating them with over-the-counter medication and hydration, and seeking professional medical assistance in emergent situations is essentially what Plaintiffs allege should have been afforded Mr. Rombach.[35]

This has not changed. Plaintiffs still have not produced any evidence that Warden Adams's policy for inmates experiencing substance withdrawal was deficient. Moreover, Plaintiffs have not proved a requisite underlying constitutional violation because they cannot prove that any of the individually-named plaintiffs were deliberately indifferent to Rombach's serious medical need. Therefore, Plaintiffs' official-capacity claims against all individually-named defendants and Bogalusa are DISMISSED WITH PREJUDICE.

### E. State-Law Claims against the Jail Employee Defendants

Plaintiffs allege that the jail employee defendants are liable under Louisiana state law for negligently causing Rombach's death. To succeed on such a claim, a plaintiff must prove a duty, breach of that duty, cause-in-fact, proximate cause, and actual damages. *Brown v. Lee*, 639 So. 2d 897, 898-99 (La. App. 1994). Under Louisiana law,

> A police officer owes a duty to a prisoner to protect him from harm and to preserve his safety. The police officer must do what is reasonable under the circumstances[, and] owes a higher degree of care to an intoxicated person than to one who is more capable of caring for himself. It is the duty of the officer to see

---

[35] R. Doc. 52 at 14.

15

      that reasonable medical service is provided to a prisoner if and when his physical condition discloses the need for such services.

*Id.* at 899 (citations omitted). Louisiana law has its own qualified immunity provision that exempts "public entities or their officers or employees" from liability "based upon the exercise or performance or the failure to exercise or perform their policymaking of discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. R.S. 9:2798.1(B).

As discussed above, there is no evidence establishing that any of the individual jail employee defendants were aware that Rombach needed medical attention. At most, some jail employees knew that Rombach was experiencing heroin withdrawal, but there is no evidence that they had any knowledge that his symptoms of such were severe enough to warrant medical attention. Hence, there is no evidence establishing that any individual jail employee defendant acted outside the course and scope of his or her duties as would render inapplicable the immunity provided by Louisiana law. Therefore, Plaintiffs state-law claims against the jail employee defendants are DISMISSED WITH PREJUDICE.

**IV.　CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that defendants' motion for summary judgment (R. Doc. 94) is GRANTED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 3rd day of August, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE